**THE ATTORNEY GENERAL**
**OF TEXAS**
AUSTIN 11, TEXAS



Gerald C. Mann

XXXXXXXXXXXXXXXXXXXXXXP
ATTORNEY GENERAL

Hon. John H. Bickett, Jr.     Opinion No. O-4997
Chairman, Board of Regents    Re: Authority of the Board of Re-
University of Texas           gents of the University of Texas
Telephone Building            to organize the corporation known
Dallas, Texas                 as the Texas Research Corporation
                              and to appropriate funds of the
                              University in the furtherance of
Dear Sir:                     its objects.

        Your letter addressed to Honorable Gerald C. Mann, Attorney General of Texas, dated February 23, 1943, requesting the opinion of this department on the above subject, has been received from which letter we quote:

        "The Board of Regents of The University of Texas respectfully presents, and requests your opinion upon, the following questions, to-wit:

        "1. Did The Board of Regents of the University of Texas have the authority to organize the corporation known as Texas Research Corporation, the charter of which was filed by the Secretary of State, of the State of Texas, March 1, 1940?

        "2. Does The Board of Regents of The University of Texas have the authority to appropriate and to pay over to Texas Research Corporation public funds belonging to The University of Texas to be used by the corporation for costs and expenses incident to obtaining and acquiring patents and copyrights?

        "3. Does Texas Research Corporation, organized under Article 1302, Section 3, Revised Civil Statutes of Texas, as a corporation for educational purposes, have the power to purchase, acquire, and own patents or copyrights, to manufacture and sell products under patents owned by it, and to license manufacturers or others under patents owned by it, and to exercise the incidental powers of such corporations as are authorized by Article 1302, Section 101, Revised Civil Statutes of Texas (Acts 1937, 45th Legislature, p. 654, ch. 323, Section 1)?

"4. Is Texas Research Corporation subject to taxes, including federal income tax?

"Copies of the charter and the by-laws of Texas Research Corporation are hereto attached.

"The University has for many years conducted and will continue to conduct scientific research in many fields through the usual administrative and faculty organizations under the supervision of The Board of Regents.

"The corporation was, in fact, organized for the principal purpose of acquiring and owning the patents that might be obtained by members of the faculty of the University, covering the discoveries or inventions made by them in the course of their scientific research work in the laboratories of the University.

"A few patents obtained by members of the faculty have been assigned by them to the corporation under agreements providing for participation by the patentee in future royalties.

"The Board of Regents of the University of Texas appropriated $20,000 of University funds to Texas Research Corporation upon the forming of the corporation.

"If the corporation continues to exist, additional appropriations of the funds of the University will, doubtless, be made to it from time to time.

"The corporation has made and, if it continues to exist, will from time to time make contracts with natural persons and other corporations looking to the use and development of the patents and the granting licenses thereunder. Such activities may involve many of the problems of business and industry and may lead to litigation by or against the corporation. The corporation, of course, can sue and be sued. The University could not be sued without the consent of the state.

"The views of those favoring the organization of the corporation and its continued existence are: that The Board of Regents may resort to any appropriate business method or instrumentality; that a

corporation is a customary instrumentality for acquiring, owning, and utilizing patents and copyrights; that a corporation organized for research purposes under one section of the statute may have the power to acquire, own, and use patents as an incident to its declared purposes without violating the rule of law that a corporation may not be organized for separate purposes permitted by a different section of the statute; and that there is no prohibition by constitution or statute in Texas against the organizing of such a state or government owned corporation.

"Serious doubt is entertained by some of the present members of The Board of Regents as to whether, in view of their duties as prescribed by the constitution and the statute, they can lawfully create a private corporation and delegate the performance of their duties to the corporation and its agents.

"Similar doubt exists as to the authority to transfer money and other assets of the University to the corporation.

"Apprehension is, also, felt by some that, if the course indicated by this corporation is sustained and continued, other activities and properties of the University may from time to time be transferred from the University to other corporations.

"Those who entertain such objections, doubts, and fears, have in mind the following: the prescribed constitutional and statutory duties of the regents as individual officers of the state; the absence of any affirmative constitutional or statutory authorization for the creation of a private corporation as an agency of the state government; the absence of any such precedent in the governmental affairs of this state; the statutory requirement that state funds must be deposited with the state treasurer; and the prohibition of Article III, Section 51, of the Constitution of Texas, that: 'The Legislature shall have no power to make any grant or authorize the making of any grant of public moneys to any individual, association or individuals, municipal or other corporations whatsoever.'

"For your information, some of the different points of view, heretofore expressed, are herewith presented to you for whatever they may be worth, by the following letters:  (1)  from Mr. Scott Gaines to Dr. J. W. Calhoun, President of The University of Texas, May 27, 1939; (2) from Mr. Ira P. Hildebrand, of the law faculty of the University to Dr. Homer P. Rainey, President of The University of Texas, September 1, 1939; (3) from John H. Bickett, Jr., to Mr. D. F. Strickland, October 15, 1942."

The copies of the letters accompanying your request as well as the copy of the Charter of the Texas Research Corporation have been valuable to us in preparing the answer of this department to the questions propounded, for which we thank you.

The University of Texas authorized and established by the Constitution and Statutes of this State is an agency of the State existing in virtue of biennial appropriations made by the Legislature.

The University is governed by a Board of Regents appointed by the Governor and confirmed by the Senate who are State officials exercising only such authority and performing only such duties as prescribed by the statutes of this State.

Article 2584, Vernon's Revised Texas Civil Statutes, pertaining to the government of the University reads:

"The government of the University of Texas shall be vested in a Board of Regents composed of nine persons.  They shall elect a chairman from their number who shall serve at the pleasure of the Board.  The State Treasurer shall be the treasurer of the University.  The board shall have the right to make and use a common seal and may alter the same at pleasure."

Article 2585, Vernon's Revised Texas Civil Statutes, pertaining to the duties of the Board of Regents of the University, reads:

"They shall establish the departments of a first-class university, determine the offices and professorships, appoint a president, who shall, if they think it advisable, also discharge the duties of a professor, appoint the professors and other officers, fix their respective salaries; and they shall enact such by-laws, rules and regulations as may be necessary for the successful management and government of the University;

they shall have power to regulate the course of
instruction and prescribe, by and with the advice
of the professors, the books and authorities used
in the several departments, and to confer such de-
grees and to grant such diplomas as are usually
conferred and granted by universities."

We have not found any authority in this state that
would authorize the Board of Regents of the University of Texas
in their official capacity to organize and establish the cor-
poration in question and transfer to such corporation for the
furtherance of its object and purpose a part of the funds appro-
priated to the University of Texas by the Legislature for its
maintenance and support, and we think no such authority exists.
Therefore, we answer your questions Nos. 1 and 2 in the nega-
tive.

The purposes for which a corporation may be formed in
this State are set out in A rticle 1302, Revised Civil Statutes.
Section 3 of said article reads:

"The support of any literary and scientific
undertaking, the maintenance of a library, or pro-
motion of painting, music and other fine arts."

Article 1302, Sec. 101, Revised Civil Statutes of
Texas (Acts 45th Leg., p. 654, ch. 323, Sec. 1) reads:

"Corporations may be created for the purpose
of purchasing and owning patents with all rights in-
cidental thereto, and to manufacture products and
processes thereunder, and to market, sell, distribute
such products, and license dealers to use such pro-
cesses in prescribed territories on a royalty basis."

It is our opinion that a corporation that is organized
for the purposes authorized by Section 2 or for the purposes
authorized by Section 3 of said Article 1302, R.C.S., would not
be authorized to exercise the powers conferred by Section 101
of said article. Tex.Jur., Vol. 10, p. 625; Johnson v. Townsend,
124 S.W. 417. We, therefore answer your question No. 3 in the
negative.

We think that in view of what has been said that it is
unnecessary to answer your fourth question. However, we will add
that it is our opinion that a corporation organized for scientif-
ic, literary or educational purposes would not be subject to
taxation so long as it is operated exclusively for those purposes,
or either of them, and not for profit, but should its net earnings,

if any, or any part thereof inure to the benefit of any individual, it would be subject to federal income tax. In other words, an exempt corporation must keep its activities within the scope of the exemption or it will be subject to the tax. Santee Club v. White, 87 Fed. (2) 5.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By /s/ E. P. Price
E. P. Price, Assistant

APPROVED MAR 12, 1943
/s/ Grover Sellers
FIRST ASSISTANT ATTORNEY GENERAL

APPROVED: OPINION COMMITTEE
BY:        GWB, CHAIRMAN

EPP:BT:wb